**PURSUANT TO INTERNAL REVENUE CODE SECTION 7463(b),THIS OPINION MAY NOT BE TREATED AS PRECEDENT FOR ANY OTHER CASE.**

T.C. Summary Opinion 2013-51

UNITED STATES TAX COURT

MARTIN TOOMBS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27665-10S.                    Filed June 25, 2013.

<u>James O. Creech III</u>, for petitioner.

<u>Thomas D. Yang</u>, for respondent.

SUMMARY OPINION

ARMEN, <u>Special Trial Judge</u>:  This case was heard pursuant to the

provisions of section 7463 of the Internal Revenue Code in effect when the

petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

Respondent determined a deficiency in petitioner's 2007 Federal income tax of $6,062 and an accuracy-related penalty of $1,212 pursuant to section 6662.[2] After a concession by petitioner,[3] the issues remaining for decision are:  (1) Whether petitioner must include in gross income a distribution he received from his former spouse's retirement account; and (2) whether he is liable for the accuracy-related penalty under section 6662.  We hold that petitioner must include the distribution in his gross income but is not liable for the accuracy-related penalty.

---

[1]  Unless otherwise indicated, all subsequent section references are to the Internal Revenue Code in effect for the year in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

[2]  All dollar amounts are rounded to the nearest dollar.

[3]  Petitioner concedes that he is not entitled to the $24,248 alimony deduction that he claimed on his 2007 Federal income tax return (tax return).

Background

Some of the facts have been stipulated, and they are so found. We incorporate by reference the parties' stipulation of facts, supplemental stipulation of facts, and accompanying exhibits.

Petitioner resided in the State of Illinois at the time the petition was filed.

In March 1989 petitioner and his former spouse, Kimberly Toombs, were married. During their marriage the former couple purchased real property in Hazel Crest, Illinois (marital residence). Also during their marriage Ms. Toombs was a participant in the U.S. Postal Service Federal Employees' Thrift Savings Plan (TSP) and maintained a TSP retirement account (TSP account).

In 2004 divorce proceedings were commenced in the Circuit Court of Cook County, Illinois (family court).

In July 2006 the family court entered a judgment for dissolution of marriage (divorce decree) that incorporated a Marital Settlement Agreement (MSA). The MSA was later amended by an agreed order.

"Article V" of the amended MSA memorializes the former couple's agreement that petitioner would acquire the right to receive a 50% interest in the

"marital share"[4] of Ms. Toombs' TSP account incident to their divorce, with such funds being payable to him. Article V of the MSA also states: "Immediately upon such funds becoming available for withdrawal by Husband, Husband shall withdraw his entire share of the monies in the Thrift Savings Plan and pay such funds to Wife as partial payment of the monies owed to Wife for her share of the equity in the marital residence."

"Article VII", dealing with the marital residence, states: "Husband shall immediately cash in his share of Wife's Thrift Savings plan and pay these entire funds to Wife".

In addition "Article X" of the MSA states: "The parties agree that all allocations and transfers of property pursuant to this divorce proceeding are intended to be non-taxable events except as otherwise provided herein." Article X of the MSA further states: "The parties shall execute any documents necessary to insure the non-taxable status of said property allocation herein." Petitioner's divorce attorney discussed Article X of the MSA with petitioner at the time of petitioner's divorce.

---

[4] The "marital share" represents the portion of the benefit that had accrued during the former couple's marriage.

In October 2006 the family court entered a retirement benefits court order (family court order) awarding petitioner the 50% interest in the marital share of Ms. Toombs' TSP account as outlined in the MSA.

In 2007, and pursuant to the amended MSA, petitioner withdrew $25,248 from the TSP account, which constituted his entire 50% interest. Also pursuant to the amended MSA, once petitioner received the distribution check, he transferred $24,248 to Ms. Toombs.[5]

Petitioner paid a commercial tax return preparer to prepare his 2007 Federal income tax return. Petitioner discussed his divorce with his preparer and provided the preparer with a Form 1099-R, Distribution From Pensions, Annuities, Retirement or Profit-Sharing Plans, IRAs, Insurance Contracts, etc., showing a "Gross distribution" of $25,248 and a "Taxable amount" of $25,238.[6] Pursuant to his preparer's advice, petitioner included the $25,248 gross distribution in his 2007 gross income and claimed a $24,248 alimony deduction representing the payment he made to his former spouse in that year.

---

[5] Nothing in the record explains the $1,000 difference between the amount withdrawn and the amount transferred to Ms. Toombs.

[6] Nothing in the record explains why $10 was treated as nontaxable.

Respondent subsequently issued a notice of deficiency in which he disallowed petitioner's $24,248 alimony deduction and imposed an accuracy-related penalty with respect to the resulting $6,062 income tax deficiency.

## Discussion

### I. Distribution

Petitioner concedes that he is not entitled to the $24,248 alimony deduction claimed on his tax return and disallowed by respondent in the notice of deficiency. See supra note 3. Nevertheless, petitioner asserts that the $25,248 distribution he received in 2007 and reported on his tax return should not have been included in his gross income.[7] Petitioner bears the burden of proof on this affirmative issue. See Rule 142(a).

#### A. Gross Income

Gross income means all income from whatever source derived, including income from pensions. Sec. 61(a)(11). Pensions and retirement allowances paid by the Federal Government generally constitute gross income unless excluded by law. Schuller v. Commissioner, T.C. Memo. 2012-347; sec. 1.61-11(a), Income Tax Regs. For a taxpayer who uses the cash receipts and disbursements method of

---

[7] Petitioner's assertion was tried by the consent of the parties. See Rule 41(b).

accounting, such as petitioner, an item is includible in gross income in the year in which the item is actually or constructively received. Sec. 451(a); sec. 1.451-1(a), Income Tax Regs.

Congress has provided specialized rules in the area of employee plans. Distributions from a TSP are generally treated in the same manner as distributions from a trust described in section 401(a). Sec. 7701(j)(1)(A) and (B); see also 5 U.S.C. sec. 8440(a)(1) and (2) (2006). Pursuant to section 402(a), amounts actually distributed from a trust described in section 401(a) are taxable to the "distributee" under section 72, which generally provides for the current taxation of distributions as ordinary income.[8]

As a general rule the term "distributee" means the participant or beneficiary who is entitled to receive the distribution under the plan. See Darby v. Commissioner, 97 T.C. 51, 57 (1991); Seidel v. Commissioner, T.C. Memo. 2005-67. However, under section 402(e)(1)(A), a former spouse is treated as the distributee with respect to distributions made to that spouse under a qualified domestic relations order (QDRO), and such distributions constitute taxable income

---

[8] Sec. 402(a) provides, in relevant part, that "any amount actually distributed to any distributee by any employees' trust described in section 401(a) which is exempt from tax under section 501(a) shall be taxable to the distributee * * * under section 72 (relating to annuities)."

to that spouse. See Mitchell v. Commissioner, 131 T.C. 215, 219 (2008). The former spouse that receives the distribution under the QDRO is also referred to as the "alternate payee". Id.

The record establishes, and the parties do not dispute, that the distribution at issue here is treated as made pursuant to a QDRO.[9]

In 2006, and pursuant to the divorce decree and family court order, petitioner was awarded a 50% interest in the marital portion of his former spouse's TSP account.

In early 2007 petitioner "cashed in" his share of the TSP account, receiving a $25,248 distribution as an alternate payee. The distribution petitioner received with respect to his 50% share of the TSP account is includible in his 2007 gross income unless excluded by law. See sec. 61(a)(11); Schuller v. Commissioner, T.C. Memo. 2012-347; sec. 1.61-11(a), Income Tax Regs. Furthermore, if not excluded, the distribution is currently taxable to petitioner under section 72. See sec. 402(a), (e)(1)(A).

---

[9] Under sec. 414(p)(11), a distribution from a governmental plan, such as the TSP in the instant case, is treated as made pursuant to a QDRO if it is made pursuant to a domestic relations order (as defined in sec. 414(p)(1)(B)) that meets the requirement of sec. 414(p)(1)(A)(i). See, e.g., Fernandez v. Commissioner, 138 T.C. 378, 381 n.3 (2012).

B. Petitioner's Theory of Exclusion

Petitioner argues that the $25,248 distribution he received in 2007 is excluded from his 2007 gross income under section 1041. In that regard petitioner alleges that his withdrawal of the TSP funds constituted a transfer of property to a third party on behalf of his former spouse within the purview of section 1.1041-1T(c), Q&A-9, Temporary Income Tax Regs., 49 Fed. Reg. 34453 (Aug. 31, 1984). We disagree.

Section 1041(a) provides that "[n]o gain or loss shall be recognized on a transfer of property from an individual to * * * a former spouse, but only if the transfer is incident to the divorce." This Court has generally held that transfers of property between spouses incident to a divorce "neither are taxable events nor give rise to deductions or recognizable income." Estate of Goldman v. Commissioner, 112 T.C. 317, 322 (1999), aff'd without published opinion sub nom. Schutter v. Commissioner, 242 F.3d 390 (10th Cir. 2000).

Section 1.1041-1T(c), Q&A-9, Temporary Income Tax Regs., supra, provides in relevant part:

> Q-9. May transfers of property to third parties on behalf of a spouse (or former spouse) qualify under section 1041?
>
> A-9. Yes. There are three situations in which a transfer of property to a third party on behalf of a spouse (or former spouse) will

qualify under section 1041, provided all other requirements of the section are satisfied. The first situation is where the transfer to the third party is required by a divorce or separation instrument. * * *

However, "[e]xclusions from gross income are construed narrowly, and taxpayers must bring themselves within the clear scope of the exclusion." Zimmerman v. Commissioner, T.C. Memo. 2008-36, 2008 WL 449786, at *1.

According to petitioner, after he was awarded a 50% interest in his former spouse's TSP account, he allegedly sold that interest back to the TSP pension administrator in exchange for $25,248 in "sales proceeds". In petitioner's view, the alleged "sale" of his 50% interest to the plan administrator in exchange for $25,248 was a transfer of property to a third party on behalf of his former spouse required by the divorce decree and, therefore, was a nontaxable event under section 1.1041-1T(c), Q&A-9, Temporary Income Tax Regs., supra.

We decline to recharacterize petitioner's withdrawal as a "sale" or transfer of property to the TSP pension administrator because the record shows that no such "sale" or transfer occurred. Rather, petitioner merely "cashed out" his 50% interest in the TSP account, withdrawing the $25,248 distribution. In our view petitioner has failed to establish that his situation falls within the clear scope of the exclusion provided by section 1.1041-1T(c), Q&A-9, Temporary Income Tax Regs., supra, particularly where Congress has provided special rules dealing with

distributions from employees' plans pursuant to domestic relations orders. Although petitioner may not have foreseen the tax consequences of his withdrawal as structured in the MSA, the Supreme Court has held that "'[w]hile a taxpayer is free to organize his affairs as he chooses, nevertheless, once having done so, he must accept the tax consequences of his choice, whether contemplated or not'". Don E. Williams Co. v. Commissioner, 429 U.S. 569, 579-580 (1977) (quoting Commissioner v. Nat'l Alfalfa Dehydrating & Milling Co., 417 U.S. 134, 148-149 (1974)).

Petitioner cites Read v. Commissioner, 114 T.C. 14 (2000), aff'd without published opinion sub nom. Mulberry Motor Parts, Inc. v. Commissioner, 273 F.3d 1120 (11th Cir. 2001), in support of his argument that the $25,248 distribution constituted a sale of his 50% interest in the TSP account to the TSP plan administrator on behalf of his former spouse. We find petitioner's reliance on Read misplaced. In Read, we held that Ms. Read's sale of stock to a corporation was "on behalf of" Mr. Read because either Mr. Read or the corporation, wholly owned by Ms. Read and Mr. Read, was obligated under a divorce judgment to purchase the stock. The situation in Read is readily distinguishable from petitioner's case because Read did not involve a pension distribution and petitioner has failed to demonstrate, in the instant case, that any transfer of

property to the TSP plan administrator occurred. Instead, the record establishes that petitioner's receipt of the TSP funds was a taxable distribution. See sec. 402(a), (e)(1)(A).

Therefore, on the record before us, we hold that the $25,248 distribution that petitioner received in 2007, and that he reported on his tax return, constitutes gross income to him for 2007.

## II.  Accuracy-Related Penalty

Section 6662(a) and (b)(2) imposes a penalty equal to 20% of the amount of any underpayment that is due to a substantial understatement of income tax. The definition of an understatement is the excess of the tax required to be shown on the tax return over the tax actually shown on the return. Sec. 6662(d)(2)(A). An understatement of income tax is substantial if the understatement exceeds the greater of 10% of the tax required to be shown on the return or $5,000. Sec. 6662(d)(1)(A).

With respect to a taxpayer's liability for any penalty, section 7491(c) places on the Commissioner the burden of production, thereby requiring the Commissioner to come forward with sufficient evidence indicating that it is appropriate to impose the penalty. Higbee v. Commissioner, 116 T.C. 438, 446-447 (2001). Once the Commissioner meets his burden of production, the taxpayer

must come forward with persuasive evidence that the Commissioner's determination is incorrect. See Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933).

The notice of deficiency indicates that petitioner should have reported a tax of $16,031 on his tax return; petitioner reported $9,969. Given our disposition of the first issue, petitioner understated his income tax liability by $6,062, which exceeds $5,000 and is greater than 10% of the tax required to be shown on his return. See sec. 6662(d)(1)(A). Accordingly, respondent has met his burden of production.

Section 6664(c)(1) provides an exception to the imposition of the accuracy-related penalty with respect to any portion of an underpayment if the taxpayer establishes that there was reasonable cause for such portion, and the taxpayer acted in good faith with respect to such portion. The decision as to whether the taxpayer acted with reasonable cause and in good faith is made on a case-by-case basis, taking into account the pertinent facts and circumstances, including the taxpayer's knowledge, education, and experience as well as the taxpayer's reliance on professional advice. See Neely v. Commissioner, 85 T.C. 934 (1985); sec. 1.6664-4(b)(1), Income Tax Regs.

It is clear from the record that petitioner is not a tax expert or experienced in tax matters and relied reasonably and in good faith on his divorce attorney and return preparer to determine the treatment of the payment made to his former spouse.  See United States v. Boyle, 469 U.S. 241, 251 (1985).  After considering the totality of the facts and circumstances, we are satisfied that petitioner, who discussed his divorce with his preparer and provided her with the Form 1099-R, acted in good faith and comes within the reasonable cause exception of section 6664(c)(1).  Therefore, we hold that petitioner is not liable for the accuracy-related penalty under section 6662(a).

## Conclusion

We have considered all of the arguments advanced by the parties, and, to the extent not expressly addressed, we conclude that those arguments do not support a result contrary to that reached herein.

To give effect to our disposition of the disputed issue, as well as petitioner's concession, <u>see</u> <u>supra</u> note 2,

<u>Decision will be entered for</u>

<u>respondent as to the income tax</u>

<u>deficiency and for petitioner as to the</u>

<u>accuracy-related penalty</u>.
